UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE SMETS,<br><br>        Plaintiff,<br>   v.<br><br>DONALD C. WINTER, Secretary of the Navy,<br><br>        Defendant. | Case No. CV 05-06461 DDP (FMOx)<br><br>ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT<br><br>(FILED ON 07-25-08) |

**I.   BACKGROUND**[1]

In 1995, Plaintiff Janice Smets applied and was rejected for the job of "Procurement Analyst" at the Naval Facilities Contract Training Center in Port Hueneme, California. (Smets Depo. 88:15-20; Smets Decl., Exh. D)  As a result, in January 1997, Plaintiff filed a complaint with the Equal Employment Opportunities Commission ("EEOC") for age discrimination.  (Smets Depo. 107:22-25; 109:11-19; 115:12-116:25)  In June 1997, Plaintiff filed a second

---

[1]  Plaintiff did not file a Statement of Genuine Issues of Material Fact, as required by local rule 56-2.  Instead, Plaintiff filed a "Response of Plaintiff to Defendant's Statement of Uncontroverted Facts" ("RSUF"), containing individual responses and, usually, evidence to oppose each of Defendant's uncontroverted facts.  Plaintiff also filed an Opposition memo, which includes a section titled "Material Issues of Fact," which does not cite to any evidence.  (See Opp.)

complaint with the EEOC for discrimination based on events in 1997, when she was again not selected to be a Procurement Analyst. (Smets Decl., Exh. D)  In July 2003, an EEOC administrative law judge ("ALJ") found that Defendant, the United States Navy, had discriminated against Plaintiff under her first complaint, but had not discriminated under her second. (Id.)  The EEOC ordered Defendant to provide Plaintiff with a position that was substantially equivalent to the one she was denied in 1995. (Id.) The parties dispute the exact nature of the 1995 position's travel requirements, and both provide supporting evidence for their positions.[2]

In December 2003, Defendant offered Plaintiff a position as a Procurement Analyst. (Smets Decl., Exh. A) After making this offer, the Navy eliminated[3] the Video Television Training ("VTT") aspect of the position. (Smets Decl. ¶ 5:24-27) The VTT was an important part of the position, because it allegedly helped to reduce the job's travel requirements. (Smets Decl. ¶ 5:24-27)

In June 2004, Plaintiff filed a petition with the EEOC alleging that Defendant had not offered her an equivalent position, and seeking to enforce the ALJ's order. (Smets Decl., Exh. D) In July 2005, the EEOC found that Defendant, had, in fact, offered

---

[2] Plaintiff presents evidence that the travel requirements of the 1995 position were "very limited," or "not heavy," which she was allegedly told by two Navy personnel. (Smets Decl. ¶ 2) In contrast, Defendant presents evidence that the position description stated that the 1995 job would actually require "extensive travel" off-site. (RSUF ¶ 6)

[3] The actual decision to eliminate this program was made approximately one year earlier, in 2002. (Daves Decl., Exh. M., Heisler Depo. 36:3-37:3) The implementation of this decision took place in December 2003.

1 Plaintiff a substantially similar position.  (Smets Decl., Exh.D at
2 4)  Defendant appealed this decision on other grounds.  (Smets
3 Decl., Exh. D, E)
4     On August 31, 2005, Plaintiff filed the action in this Court.[4]
5     On September 19, 2005, the EEOC ruled that even though
6 Defendant had offered Plaintiff a substantially equivalent
7 position, it was required to make this offer again.  (Id.; RSUF
8 7:18-24)
9     Defendant made another offer to Plaintiff on November 1, 2005,
10 with an adjusted offer on December 15, again for the position of
11 Procurement Analyst.  (Smets Decl. ¶ 5)(Smets Decl., Exh. C, D)
12 The job was similar to the one that Plaintiff had been offered in
13 1995, except that Plaintiff believes that the travel requirements
14 were not the same.  (Smets Depo. 193:5-6) (Smets Decl. ¶ 7)  As a
15 result, she believed the positions were not substantially similar,
16 and she declined the job.  (Smets Depo. 193:7-12) (Smets Decl. ¶ 7)
17     On May 1, 2006, Defendant offered Plaintiff yet another
18 position, as a "contract negotiator."  (Smets Depo. Vol. III 14:3-
19 4)  On May 2, Plaintiff emailed Defendant to accept the offer.
20 (Smets Depo. Vol. III 90:5-7)  Smets then requested a delayed start
21 date.  (Smets Depo. Vol. III 34:4-6)  Defendant did not give Smets
22 the revised date, and on May 25 rescinded its job offer.  (Smets
23 Depo. Vol. III 25:7-8)
24     Plaintiff states four claims[5] against Defendant:  1)
25 retaliation based on Defendant's 2003 cancellation of its VTT

---

[4] Her Second Amended Complaint was filed on October 9, 2007.

program in Port Hueneme;[6] 2) failure to comply with the EEOC's 2005 order to provide Plaintiff a substantially similar position to the one she was denied in 1995; 3) discrimination and retaliation ("likely based on age") in connection with the jobs she was denied in 1995 and 1997; 4) retaliation based on Defendant's 2006 rescission of its job offer.

Defendant now moves for summary judgment or adjudication of Plaintiff's claims.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. However, no genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to

---

[6] Plaintiff's Complaint pleads relief for both retaliation and discrimination, based on: 1) the elimination of the VTT program at Port Hueneme; and 2) disclosure to the Defense Acquisition University that Plaintiff had filed her 1997 EEOC complaint. (Compl. ¶ 6, 12-14)

find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**III. DISCUSSION**

    A.   <u>Retaliation - Plaintiff's Claims 1 and 4</u>

Title VII and the ADEA prohibit retaliation by an employer for participation in any proceeding under the title or act. 42 USC § 2000e-3(a); <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 888 (9th Cir. 1994)(burdens of proof and persuasion are the same under Title VII and the ADEA). To establish a prima facie case of retaliation, the plaintiff must demonstrate: 1) a protected activity; 2) an adverse employment action; and 3) a causal link between the two. <u>Steiner v. Showboat Operating Co.</u>, 25 F.3d 1459, 1464-65 (9th Cir. 1994). The burden of production then shifts to the defendant to articulate legitimate, non-retaliatory reasons for any adverse action taken. <u>Id.</u> If the defendant is able to do this, Plaintiff bears the "ultimate burden" of demonstrating that the defendant's explanation is merely a pretext for a discriminatory motive. <u>Id.</u>

        1.   <u>Cancellation of VTT program</u>[7]

            a.   <u>Cancellation of VTT program in 2003</u>

Defendant does not dispute that Plaintiff engaged in a protected activity. (Compl. ¶ 6; Mot. 14:2-8) Defendant disputes: 1) whether Plaintiff suffered an adverse employment action, 2) causation, and 3) whether Defendant's behavior was pretextual.

                i.   <u>Adverse Employment Action</u>

---

[7] Plaintiff's Complaint also alleges retaliation based on the allegation that Defendant disclosed her EEOC activity to the "Defense Acquisition University." (Compl. ¶ 6) This allegation is not discussed by either party on this motion, no evidence is provided to support it, and it is unclear whether it remains part of Plaintiff's case. (<u>See</u> RSUF 1:26-2:12)

5

Defendant's first argument is that Plaintiff did not suffer an adverse employment action in 2003, when the VTT program was eliminated. (Mot. 3-5) An adverse employment action is one which is "reasonably likely to deter employees from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).

Plaintiff does not attempt to address this argument in her motion. However, Plaintiff does present facts which imply that without the VTT component, which reduced the job's travel requirements, the 2003 position was no longer as valuable as previously. (Smets. Decl. ¶ 2); see Ray, 217 F.3d at 1240 ("a wide array of disadvantageous changes in the workplace constitute adverse employment actions").

Even for an issue where the Plaintiff has the ultimate burden of persuasion at trial, the moving party still must persuade the court there is no genuine issue of material fact. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) Here, Defendant merely states its argument without explaining how the Plaintiff's case is deficient. (Mot. 14:2-6)

The Court finds that Plaintiff suffered an adverse employment action when Plaintiff removed the VTT component of the position it offered to her in 2003.

### ii. Causation

At the Naval Facilities Contracts Training Center ("NFCTC"), where Plaintiff's 2003 offered-position was located, the Defendant discontinued using the VTT component of classes in either 2001 or 2002. (Heisler Depo. 30:3-19) However, it continued to pay for the equipment lease, costing approximately $40,000 per year. (Id.) Sally Heisler, Executive Director of the Naval Facilities

1  Institute, was asked to cut costs in NFCTC in October, 2002, and
2  decided to eliminate the VTT program in November or December of
3  that year.  (Id. 9:7-20; 35:11-14; 36:3-37:3) The program was not
4  actually eliminated, though, until December 2003.  (Smets. Decl. ¶
5  5)

6      Defendant states that Plaintiff cannot establish causation,
7  because Defendant decided to discontinue the VTT component of
8  Plaintiff's job before she expressed any interest in the position.
9  (Mot. 14:6-8) Plaintiff does not attempt to address this issue in
10 her motion, but relevant arguments can be found in her discussion
11 of the issue of pretext.

12     Plaintiff admits that the decision to discontinue the VTT
13 occurred before her job offer, but notes that the decision was
14 "finalized" and implemented after Plaintiff was offered the job
15 with the VTT component.  (Opp. 3:10-14; Smets Decl., Exh. A)
16 Plaintiff also states that it was Heisler (under the name "Oswalt")
17 who both decided to cancel the VTT and who offered Plaintiff her
18 job in December 2003.  (RSUF 17:7-19; Smets Decl., Exh. A, B)

19     As such, both the decision to discontinue the VTT and its
20 implementation provide evidence of causation which links
21 Plaintiff's protected activity and the adverse employment decision.
22 Plaintiff may rely on either event to establish a prima facie case,
23 and it is not material that Plaintiff admits that Defendant made
24 its decision to cancel the VTT before offering to hire Plaintiff.

25     The Court finds that there is a genuine issue of material
26 fact, with regard to whether causation existed on Plaintiff's
27 retaliation claim.

28                        iii.  Pretext

Defendant's final argument is that Smets has not presented evidence of a genuine dispute of material fact as to whether the cancellation of the VTT was a pretext for discrimination. (Mot. 14:9-25) Plaintiff's prima facie case is that the implementation of the decision to cancel the program occurred at approximately the same time as when Defendant offered Plaintiff her job. (Opp. 3:10-14) In order for the burden to shift to Plaintiff to establish pretext, Defendant must first show that it has a legitimate, non-discriminatory motive for any adverse action taken. Steiner, 25 F.3d at 1464-65.

Defendant provides evidence of a non-discriminatory rationale for why the decision was made to cancel the VTT, but does not address how this rationale is related to its implementation. (Mot. 14:9-25) However, Defendant's cancellation evidence is at least circumstantial evidence that there was no discriminatory motive when the VTT was actually removed from the NFCTC. Circumstantial evidence is sufficient to shift the burden under a retaliation claim. Conrwell v. Electa Central Credit Union, 439 F.3d 1018, 1029-39 (9th Cir. 2006). As such, the burden shifts to Plaintiff to prove pretext.

Plaintiff states that pretext is established because the Defendant, "in general, continues to use VTT and has found it to be cost-effective." (Opp. 3:14-18) Plaintiff does not cite to any evidence to prove this in her Opposition, but in the RSUF and her Declaration states that she undertook independent research indicating that the Navy still uses VTT, and that it is cost-effective. (RSUF 18:1-4; Smets Decl. ¶ 10) Plainiff also provided an exhibit of this research, a computer printout "obtained from the

8

1 internet," which includes information on VTT usage at some Navy
2 facility.  (Id.; Smets Decl. ¶ 10, Exh. F)  However, as Defendant
3 argues, this evidence cannot be considered by the Court, because it
4 is inadmissible on a motion for summary judgment.  (Reply 2:3-23)

5      In general, facts relied on by the parties on a motion for
6 summary judgment must be admissible under the Federal Rules of
7 Evidence.  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,
8 896 F.2d 1542, 1555 (9th Cir. 1989).  For example, the parties
9 cannot use any document which lacks a proper foundation to
10 authenticate it.  Id. at 1551.  However, the mere form of the
11 evidence's content cannot be used to exclude it, if the contents
12 are otherwise admissible.  Fraser v. Goodale, 342 F.3d 1032, 1036
13 (9th Cir. 2003) (admitting contents of a diary, regardless of
14 whether the diary itself is admissible).

15      A proper foundation is established where the proponent offers
16 sufficient evidence to show the document is what it purports to be.
17 Fed. R. Evid. 901(a).  Here, the Plaintiff does not explain what
18 Navy facility the internet printout refers to, what website it
19 comes from, when it was printed, or who generated it.  (Smets Decl.
20 ¶ 10)  Nor is this information clear from the exhibit itself.  Some
21 documents in the printout suggest it was printed on August 27, 2007
22 from one website, some pages have no dates or internet site listed.
23 (Smets Decl., Exh. F)  As such, Plaintiff has not established a
24 proper foundation and the evidence cannot be considered.

25      However, even considering this evidence, if it is used to show
26 that the use of VTT is cost-effective (contrary to Defendant's
27 rationale for eliminating VTT), it does not create a genuine
28 dispute of material fact.  As noted above, Defendant made the

9

decision to eliminate VTT before offering Plaintiff a job in 2003, and therefore any pretext Plaintiff could show is therefore related to the decision itself, but not to Plaintiff's prima facie case, which focuses on the decision's implementation.

Finally, Plaintiff argues that pretext is demonstrated because the elimination of VTT was "discussed for several years," but only implemented when she was offered a job. (Opp. 3:14-16) Plaintiff cites to no evidence of these discussions. However, the decision to eliminate the program was made approximately one year before its actual elimination. (Smets Decl. ¶ 5; Heisler Depo. 36:3-37:3) This largely restates her prima facie case. The timing of the implementation of the VTT elimination is suspicious because the decision and any related discussions preceded it by almost one year, and these are not distinct allegations.

Based on the record before it, Plaintiff has not created a genuine issue of fact for her claim of retaliation. With the exception of the facts demonstrating a prima facie case, the record lacks any direct or circumstantial evidence of Defendant's motives. This leaves a fact-finder with little basis to form conclusions regarding whether Plaintiff's adverse employment action was intentional, merely a coincidence, or from mixed motives. Accordingly, the Court grants summary judgment to Defendant on the retaliation claim based on the cancellation of the VTT.

2.  <u>Rescission of 2006 Job Offer</u>

As noted above, on May 1, 2006, Defendant offered Plaintiff a position as a "contract negotiator." On May 25, Defendant rescinded this job offer. Plaintiff's prima facie case is based on the fact that Plaintiff's 2006 job offer from Defendant was

10

1 rescinded after Defendant learned of Plaintiff's EEOC activity.
2 (Mot. 3:22-23)  Evidence in the record supports this claim, which
3 shifts the burden of proof to Defendant.  (<u>See</u> Daves Decl., Exh. B,
4 Sanchez Decl. 2-3)

5     Defendant's legitimate, non-discriminatory rationale is
6 summarized by Tammy Sanchez, who rescinded the offer on behalf of
7 Defendant.  (Sanchez Decl. 3-6)  Sanchez states:

> I decided to withdraw the job offer because Ms. Smets would
> not accept the job offered, would not come to work, had misled
> [another supervisor who attempted to hire her], and her
> actions conveyed to me that she was ambivalent about whether
> she really wanted the contract negotiator position.  Her
> actions did not convey to me that she would be an individual
> that would work independently to carry out assignments and
> meet mission program goals.  Ms. Smets never officially
> accepted the job offer, she did not sign and return the job
> offer letter, dated May 8, 2006, and she did not report for
> work on May 15, 2006.

(Sanchez Decl. 5)

    In response, Plaintiff argues pretext is established by:  1) the "improbability that [Defendant] would not wait a month for Plaintiff to report for duty" and 2) that "the reasons given by Sanchez for the rescission" permit an inference of retaliation. (Mot. 3:23-26)

    To begin, Plaintiff's first argument merely suggests that Defendant's non-discriminatory rationale is not credible without

11

supporting this argument. See National Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983) (mere discrediting evidence insufficient to oppose summary judgment motion). In addition, Plaintiff's argument for pretext is that her requests for delay were denied, but this merely is another way of restating Plaintiff's prima facie case, or of describing Defendant's non-discriminatory rationale from Plaintiff's perspective. Defendant rescinded Plaintiff's job offer in part because she would not report to work on the date Defendant provided. Plaintiff also provides no evidence to support her argument that Defendant's denial of her request for a delayed start is "improbable." For example, there is no evidence Defendant has granted extensions to other employees in similar circumstances.

As to Plaintiff's second argument, she does not explain why Sanchez's Declaration suggests pretext, and this is not a fair reading of Sanchez's statements. The only implication of retaliation in her comments is their restatement of Plaintiff's prima facie case (the suspicious timing). Otherwise, Sanchez's comments prove that Defendant had a legitimate, non-discriminatory motive for rescinding Plaintiff's offer.

Neither of Plaintiff's arguments are sufficient to raise a genuine issue of material fact. Accordingly, the Court grants summary judgment to Defendant on the retaliation claim based on the rescission of Plaintiff's 2006 job offer.

    B.    <u>Failure to Comply with EEOC Order - Plaintiff's Claim 2</u>

Plaintiff pleads generally that Defendant has not complied with the September 19, 2005 EEOC order that required it to offer Plaintiff a substantially similar position to the one she was

denied in 1995.  Plaintiff pursues this claim under the Administrative Procedure Act, 5 U.S.C. § 706, the Mandamus Statute, 28 U.S.C. § 1361, under 29 CFR 1614.502(a), and 29 U.S.C. § 1614.503(b).  (Compl. ¶ 17)

Defendant argues that Plaintiff did not exhaust her administrative remedies.  Plaintiff does not address this argument.  The relevant statute is 29 C.F.R. 1614.504, which states:

> If the complainant believes that the [Defendant] has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance.

29 CFR 1614.504(a).  Plaintiff does not argue and the record has no evidence that she filed this Complaint after attempting to notify the EEOC that Defendant's actions were non-compliant with the EEOC's decision.  As such, her claim for enforcement of the final EEOC action is barred for failure to exhaust remedies.  See Farrell v. Principi, 366 F.3d 1066, 1067-68 (9th Cir. 2004)("Compliance with the administrative procedures set forth in 29 C.F.R. § 1614.504 is . . . not required when the claimant seeks review of the disposition of his administrative complaint, rather than enforcement of a final action or settlement agreement.")(emphasis added); compare with Bak v. Postal Serv., 52 F.3d 241, 244 (9th Cir. 1995) ("a claimant is no longer required to exhaust his

administrative remedies with regard to an age discrimination claim prior to filing a civil suit"). Plaintiff seeks both enforcement of the 2005 EEOC order and, in the alternative, seeks review of the disposition of her administrative complaint. To the degree that she seeks enforcement of the 2005 order, this is barred.

However, even if Plaintiff's claims are not time-barred, she still does not present sufficient evidence to present a genuine dispute of material fact. As noted by Defendant, the job duties of the 2005 position offered Plaintiff were the same as the duties offered to her in 1995. (Smets Depo. 191:10-15) It was the same type of job. (Smets Depo. 192:22-193:2) The geographical location was the same. (Smets Depo. 192:1-8) The pay was the same. (Smets Depo. 193:3-4)

The only dispute is whether the travel requirements were the same. (Opp. 3:5-8) Again, Plaintiff presents evidence that the travel requirements of the 1995 position were "very limited," or "not heavy," which she was allegedly told by two Navy personnel. (Smets Decl. ¶ 2) In contrast, Defendant presents evidence that the position description stated that the 1995 job would actually require "extensive travel" to selected sites. (RSUF ¶ 6) For the 2006 position offered Plaintiff, the parties agree that the job required "up to" 50% time traveling. (Mot. 18:16-17)

Even granting Plaintiff any reasonable inferences about the 1995 job, she does not present a genuine dispute here. No reasonable jury could find that this difference, alone, affects the outcome of her claim.

For the above reasons, the Court grants Defendant's motion on Plaintiff's claim for enforcement of the 2005 EEOC decision.

### C. Discrimination and Retaliation in 1995 and 1997 - Plaintiff's Claim 3

Plaintiff claims that she suffered discrimination and retaliation in connection with the job she was denied in 1995 and 1997. (Compl. ¶ 23-25) Although Plaintiff was partially successful in her case at the EEOC, she wishes to re-examine the issues in this Court. Defendant argues that Plaintiff did not timely file her claim and is barred from making this claim under 29 C.F.R. § 407(a). (Mot. 19:17-24) The Court agrees.

Plaintiff received a final decision on her employment discrimination claim on July 14, 2003, when an EEOC ALJ found that Defendant had discriminated against her in 1995 (and had not discriminated in 1997), and ordered Defendant to offer Plaintiff a substantially equivalent position to the one she was denied in 1995. (Smets Decl., Exh. D at 1) Plaintiff filed the case in this Court on August 31, 2005. This is approximately two years after she received the EEOC order and beyond the 90 day deadline for filing a district court action. 29 C.F.R. § 407(a).

Plaintiff argues that "the only statute of limitations which is applicable" is one which applies to Plaintiff's claim that the "Navy's offer" was not for a substantially similar position. (Opp. 4) Since Defendant made numerous offers to Plaintiff, it is unclear which this argument refers to. Plaintiff's argument also contradicts her Complaint, deposition testimony, and the RSUF, all of which indicate that she wishes the Court to reexamine the issues

15

decided by the EEOC in 1995 and, possibly, 1997. (Compl. ¶ 23, 25) (Smets Depo., 117:5-11)(RSUF ¶ 1 at 2:6-11) Regardless, these claims are barred, because Plaintiff did not file them within 90 days of receipt of the final agency decision in 2003. 29 C.F.R. § 1614.407(a).

Plaintiff also states that equitable tolling applies to her claims from 1995 and 1997, although she does not attempt to support this argument. (Mot. 4) Equitable tolling is appropriate where there is "excusable ignorance of the limitations period and a lack of prejudice to the defendant," or "the danger of prejudice to the defendant is absent, and the interests of justice require relief." Forester v. Chertoff, 500 F.3d 920, 930 (9th Cir. 2007) (citations omitted).

Plaintiff cannot argue for excusable ignorance, because she was represented by counsel in 2003. (Daves Decl., Exh. A at 8:6-9) Plaintiff also cannot state that this was merely a clerical or book-keeping error. See, e.g., Baker v. Dep't of the Navy, 2007 U.S. Dist. LEXIS 75010, *11 (N.D. Cal. 2007)(not permitting tolling where Plaintiff miscounted week and weekend days). There is also no evidence that the EEOC made any misrepresentations to her. Josephs v. Pacific Bell, 432 F.3d 1006, 1014 (9th Cir. 2005) ("Equitable tolling is available when an EEOC representative misleads the plaintiff concerning his claim.")

Lastly, the interests of justice do not require re-examining Plaintiff's claims. Her counsel received notice of the July 2003 EEOC decision, and presumably did not decide to file in district court at that point because Plaintiff had received a favorable

16

judgment. Alvarez-Machain v. U.S., 107 F.3d 696, 701 (9th Cir. 1996) (noting federal courts have applied the doctrine of equitable tolling in "extraordinary circumstances beyond plaintiffs' control," which made it "impossible to file the claims on time").

The Court grants Defendant's motion with regard to Plaintiff's discrimination and retaliation claims based on activity from 1995 and 1997.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS summary judgment to Defendant on all claims in this action.

IT IS SO ORDERED.

Dated: September 25, 2008

_____
DEAN D. PREGERSON
United States District Judge